The People of the State of New York Respondent, 
against
Carlos Juarez, Appellant.



Appeal from a judgment of the Criminal Court of the City of New York, Kings County (Geraldine Pickett, J.), rendered August 13, 2013. The judgment convicted defendant, after a nonjury trial, of attempted criminal possession of a weapon in the fourth degree, attempted assault in the third degree, menacing in the third degree, and harassment in the second degree.




ORDERED that the judgment of conviction is reversed, on the facts, and the accusatory instrument is dismissed.
Defendant was initially charged with assault in the third degree (Penal Law § 120.00 [1]), menacing in the second degree (Penal Law § 120.14 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), menacing in the third degree (Penal Law § 120.15), and harassment in the second degree (Penal Law § 240.26 [1]). The accusatory instrument alleged that, on or about May 24, 2013 at approximately 8:05 a.m., at a homeless shelter, defendant used one hand to apply pressure to the jaw and neck of another resident at the shelter, and then hit that resident about the head with a metal lock. Before trial, the People moved to dismiss the counts of assault in the third degree and menacing in the second degree, and to reduce the count of criminal possession of a weapon in the fourth degree to attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [2]). 
At a nonjury trial, an officer with the Department of Homeless Services, who was assigned to the shelter, testified that she had been called to the shelter's dorm room by a resident who did not want to be identified. When she entered the room, she observed one resident bleeding from his head and defendant standing by a bed with blood splattered on his shirt. Before she had entered the dorm room, she had not heard any type of commotion coming from inside the room. Moreover, she admitted that she did not know exactly when the altercation had occurred, who had started it, how many people had been involved, or whether defendant had been defending himself. The officer further testified that she had determined that defendant had hit the other resident based on what had been told to her and because defendant had blood on his shirt. She did not recover any weapons or a lock from defendant. The officer arrested defendant and, thereafter, in response to her questioning, defendant stated "I didn't hit him with a lock. I hit him with my hand." There were at least two other people in the room when the incident occurred, yet no statements were taken from any of them because no one wanted to give a statement. 
Another officer with the Department of Homeless Services, who was assigned to the same homeless shelter, testified that he had been called into the dorm room after the incident and did not witness the altercation. He had no idea who had started the altercation and he did not know whether defendant had been defending himself against the other resident. He searched the room for a weapon or a lock, but did not recover one. Although each resident is issued a combination padlock and a locker when being processed to sleep in the shelter, it was his opinion that there was no reason to believe that any of the locks had been used in the fight and he observed that the locks were on the lockers in the dorm room following the incident. He did not take any statements from the other people in the room. 
The injured resident's medical records were entered into evidence, which revealed that he had told the medical staff at the hospital that he had been sleeping in the shelter when he had become involved in an altercation and had been struck once with a combination lock. He did not identify defendant as being the person who had hit him. The injured resident did not testify at trial, nor did defendant or any of the other residents who may have witnessed the altercation. Following the trial, defendant was convicted of attempted criminal possession of a weapon in the fourth degree, attempted assault in the third degree, menacing in the third degree, and harassment in the second degree.
Defendant failed to preserve for appellate review his challenges to the legal sufficiency of the evidence supporting his convictions (see CPL 470.05; People v Gray, 86 NY2d 10, 20-21 [1995]; People v Boyle, 289 AD2d 251 [2001]), and we decline to review them in the exercise of our interest of justice jurisdiction (see People v Henderson, 120 AD3d 1258 [2014]; People v Bridges, 63 AD3d 752 [2009]). However, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15), upon reviewing the record, assessed in light of the elements of the offenses charged, we determine that the verdict as to each of the counts was against the weight of the evidence (see People v Danielson, 9 NY3d 342 [2007]; People v Samuels, 130 AD3d 757 [2015]).
There was insufficient evidence admitted at trial linking defendant to the resident's injury or to the lock. Moreover, given the absence of proof regarding the circumstances surrounding defendant's admitted hitting of the resident, the People did not establish beyond a reasonable doubt that defendant had possessed the requisite intent to commit the various crimes of which he was convicted (see People v Caulkins, 82 AD3d 1506 [2011]; cf. People v Bracey, 41 NY2d 296, 301 [1977]).
Accordingly, the judgment of conviction is reversed and the accusatory instrument is dismissed.
Solomon, J.P., Weston and Elliot, JJ., concur.
Decision Date: April 07, 2016